STEPHEN MAHONEY, Appellant, *v.* THE VACUUM OIL COMPANY, Respondent.

*Master and servant — relation of a foreman to employees — when his acts are those of a co-servant.*

A master assumes to his servant the duty of using due care to provide him with suitable implements for his use and a safe place in which to perform his work, but the master is not responsible to the servant for the consequences of the negligence of a co-employee unless he, with knowledge of the unfitness of such co-employee, employs or continues him in his service.

Whether an act or omission having relation to the service of employees is that with which their master is chargeable is dependent upon its nature, and not upon the grade in the service of the person whose act may come in question between the master and the employee; the relation of a foreman to other workmen is that of a co-employee, except as to such acts performed by him as are embraced in the duties of the employer.

APPEAL by the plaintiff, Stephen Mahoney, from an order of the Supreme Court, made at the Monroe County Circuit and entered in the office of the clerk of the county of Monroe on the 23d day of August, 1893, denying the plaintiff's motion for a new trial made upon the minutes.

The plaintiff by his action sought to recover damages for personal injuries suffered by him while in the service of the defendant under the following circumstances:

He, with others in the employ of the defendant, was engaged in putting a tank weighing about six tons into a hole about six feet in diameter cut through the floor of the second story of the building and onto a supporting iron girder about eight feet below the floor. For that purpose the lower end of the tank was placed so as to project some over the hole in the floor, and a two-inch rope was put through a hole in the bottom of the tank to be there securely fastened, with a view to raising and placing the tank by means of a tackle above. For the purpose of putting the rope through and securing it there the plaintiff and others were on a plank. It broke and he was precipitated to the bottom of the building and sustained the injuries complained of. He was nonsuited at the trial.

*Eugene Van Voorhis*, for the appellant.

*William F. Cogswell*, for the respondent.

BRADLEY, J. :

The general principles applicable to the relation of employer and employee in respect to the duties to be observed by the former for the safety of the latter while serving in such relation are well settled. And they may be embraced in the general proposition that the master assumes to his servant the duty of using due care to provide him suitable implements for his use and a safe place in which to perform his work; and that the master is not responsible to him for the consequences of the negligence of a co-employee unless he, with knowledge of his unfitness, employs or continues him in the service.

While this doctrine is recognized by the plaintiff's counsel, he contends that the defendant failed to perform the duty it owed to the plaintiff, in that it did not furnish him a place of safety to perform the work in which he was engaged at the time in question; and that his injury was the consequence of such default or neglect on the part of the defendant, or with which he was chargeable.

If the placing of the plank over the hole in the floor was within the duties assumed by the defendant, the plaintiff's case was improperly withheld from the jury. The hole, about six feet in diameter, had been cut in the floor, the tank was placed there to be hoisted, dropped into the hole and upon the supporting girders below. This was the situation when the plaintiff and the other employees of the defendant proceeded to put the tank in the place so provided for it.

To accomplish this a rope and tackle were brought into requisition. To draw the rope through the hole in the lower end of the tank and there fasten the end of it it was necessary for some one or more of those engaged in the work to occupy a place over the hole in the floor, and to enable that to be done the plank was picked up and placed over it by the foreman. The plaintiff and two other workmen including him were standing upon it, at work securing the end of the rope. The fourth man (Patterson) stepped upon the plank, it broke, and the plaintiff, with some others, fell about eighteen feet to the bottom of the building and was injured.

It was a hemlock plank, nine feet long, one foot wide and two inches thick. It was so smeared with dust or dirt as to conceal its defective quality from observation. The plank was brought into

requisition as an expedient for the time being, for use in the performance of the work of setting the tank in its place.

There were other planks about there which the men could have used as the means of strengthening the support if they had chosen to do so. The floor was a safe place to work. The hole was rendered dangerous only by want of care to avoid falling through it. And so far as it was necessary for the accomplishment of the work to get over it, the means were to be found in the plank lying about there to give safety and protection from danger.

In such a case it would seem that the act of making use of the appliances for such purpose is within the details of the work of the co-employee rather than of the master or his representative. (*Hogan* v. *Smith*, 125 N. Y. 774; *Cregan* v. *Marston*, 126 id. 568.)

The fact that the employee who placed the plank over the hole in the floor was foreman in the work has no particular significance upon this question. Whether an act or omission having relation to the service of the employees is that with which the master is chargeable is dependent upon the nature of the act and not upon the grade in the service of the person whose act or default may come in question between the master and an employee. The relation of the foreman to the other workmen was that of co-employee, except as to such acts performed by him as were embraced in the duties of the defendant. (*Loughlin* v. *State of New York*, 105 N. Y. 159; *Cullen* v. *Norton*, 126 id. 1.)

The line of distinction may seem narrow between some cases where liability has and has not been sustained, founded upon the relation of master and employee. In *Hogan* v. *Smith* the plaintiff sought to recover on the alleged ground that the defendant had neglected to furnish a safe place for the plaintiff's intestate to do the work required of him in the service. The court held that the omission of the employees to make use of the materials and means at hand for their own safety was their fault and not that of the defendant, and that it was their privilege and duty to use the means and materials to do the work in their own way. And such was the doctrine upon which was determined *Cregan* v. *Marston*, where the death of the plaintiff's intestate was caused by the continued use of a rope attached to a derrick, after it had become so worn as to be unsafe, while there were other ropes from which they might have taken one

to supply its place. It was held that it was in the details of their duty to note the wear of the rope and by observation to ascertain when its condition became such as to require the substitution of another for the safety and efficiency of the service. The several cases cited by the plaintiff's counsel may be distinguished from those before mentioned. In *Benzing* v. *Steinway & Son* (101 N. Y. 547) the defective platform was provided for the work in view, and the plaintiff was called from his other service to perform upon the platform some work not in the line of his general employment. It was held that the defective condition of the platform which caused the plaintiff's injury was chargeable to the negligence of the defendant, although it was placed there by another in his service.

In *Kranz* v. *Long Island Ry. Co.* (123 N. Y. 1) the plaintiff's intestate, an employee of the defendant, who, by direction, entered a trench which had been opened to clean out an underground water pipe, and while doing it the earth caved in causing his death. It was held that the defendant owed him the duty of providing him a reasonably safe place to perform the work which he was directed to do, and that he had the right to assume that it had been made reasonably safe.

Similar to this was the case of *Wannamaker* v. *Rochester* (44 N. Y. St. Repr. 45; 137 N. Y. 529). In *McLean* v. *Standard Oil Co.* (50 N. Y. St. Repr. 626) the defective scaffold on which the plaintiff was at work when it fell causing his injury, was erected by carpenters in the service of defendant preparatory to the work in which the plaintiff was engaged at the time it gave way. In none of those three cases was preparation of the places for the work to be done within the details of the service in which the persons who suffered the consequences of the defective and unsafe conditions were engaged. A like principle in some phase is that upon which the other cases cited on the part of the plaintiff were determined. (*Pantzar* v. *Tilly F. Iron Mining Co.*, 99 N. Y. 368; *Bushby* v. *N. Y., L. & W. R. R. Co.*, 107 id. 374.) The present case is distinguished from those where the master has been held liable to his employee for not furnishing a reasonably safe place for him to work, in the fact that the plank which gave way was an instrumentality employed at the time in the work being performed. The place of the service was in the building, upon the second floor of it, which

was safe.   The means used to perform it were those appropriated by the employees as such.   (*Butler* v. *Townsend*, 126 N. Y. 105.) And the defendant, having furnished sufficient help with materials for the work, was not responsible for the use made of them, or for the negligence of any of them engaged in its performance.   The fault was theirs, or that of some one or more of their co-employees. (*Hussey* v. *Coger*, 112 N. Y. 614; *Cullen* v. *Norton*, 126 id. 1.) It is urged with some force that as Patterson, the defendant's superintendent, directed the plaintiff to go upon the plank, which resulted in his injury, the defendant is chargeable with the consequences, and in support of that proposition reference is made to *McGovern* v. *Central Vermont R. R. Co.* (123 N. Y. 280) and *McCampbell* v. *Cunard Steamship Co.* (69 Hun, 131).

In the former of these cases the plaintiff's intestate, having been directed to do so by the defendant's superintendent, went into a grain elevator to clean it out upon the assumption that the grain had been discharged from it.

While he was there some of the grain which had become heated, was thus rendered cohesive and having adhered to the elevator, came down upon the plaintiff's intestate causing his death.

The place in which he was directed to perform the work was for that reason unsafe; and the court held that inasmuch as by the exercise of care on the part of the defendant the condition in that respect might have been ascertained the question of its negligence was for the jury.   In that respect the defendant was clearly chargeable with the direction of its superintendent to the intestate.   In the *McCampbell* case there was a defective condition or situation of a skid extending from the defendant's vessel to the dock, making a slide on which the plaintiff was employed and directed by the defendant's superintendent to remove the cargo from the ship by means of a truck.   In the attempt to do this the plaintiff, by reason of the defective connection of the skid with the dock, was injured. And it was held that the place where he was put to do the work was unsafe and the danger one which he did not assume.

It may be observed that those places were unsafe, and the conditions which made them so were not produced in the progress of the work in which the injured employees were engaged, and not a detail of their service in its performance.   And although Patterson

was the *alter ego* of the defendant in the present case in doing whatever required that relation, his grade in the service of the defendant was dependent upon that in which for the time being he was engaged. When, therefore, he was at work with the others at the time in question he was a co-employee, and his contribution by his acts and direction in the details of the work were not those of the master or for which the latter was responsible to those who were engaged there with him in its performance. (*Crispin* v. *Babbitt*, 81 N. Y. 516; *Cullen* v. *Norton*, 126 id. 1.)

If these views are correct it follows that to whatever negligence the injury to the plaintiff may have been attributable it was that of the co-employees or some one or more of them, and was within the hazards assumed by him in the service.

With a view as is said of showing that the foreman was incompetent for the position assigned to him a witness was by the plaintiff's counsel asked: " Did you observe his manner of doing work ? " The evidence was excluded and exception was taken. It may be that the ruling was made upon the ground that no such defense was alleged in the answer, as that was a specific ground of the objection, but however that may be the man Schoenfilder was in this work and at the time in question acting in the capacity of a co-employee merely, and there was no purpose indicated in the evidence offered, to prove anything affecting his condition, character or habits which rendered him unfit for service or prejudicial to his relation as such co-employee.

It, therefore, seems that without reference to the question of pleading the plaintiff was not prejudiced by the exclusion of the evidence.

No other question requires consideration.

The order should be affirmed.

Dwight, P. J., and Lewis, J., concurred; Haight, J., not sitting.

Order denying motion for a new trial appealed from affirmed, with costs.