PETER B. HACKETT, Appellant, v. WILLIAM H. MASTERSON, Respondent.

*Negligence — use, with an adequate appliance furnished by the master, of another thing not supplied by him — admission that the master " owned or had control of the rolling stock, equipments and appliances used in said work " — a judgment on a nonsuit should not be on the merits.*

A master, who has furnished complete and adequate appliances for the work, cannot be held liable to an employee where a thing not furnished by the master was used in doing the work in connection with a part of the master's appliance, without his authority or notice to him (even though the foreman of the job chose it or consented to its use), with the result that the part of the appliance furnished by the master did not work safely when used in connection with such thing elsewhere obtained.

The employee is not relieved from the necessity of furnishing proof bringing the use of the foreign appliance home to the master by an allegation contained in the complaint and admitted by the answer that the master " owned or had control of the rolling stock, equipments and appliances used in said work."

A judgment entered upon a nonsuit should not adjudge that the complaint be dismissed upon the merits.

APPEAL by the plaintiff, Peter B. Hackett, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Nassau on the 5th day of August, 1902, upon the dimissal of the complaint by direction of the court after a trial at the Nassau Trial Term, the verdict of a jury theretofore rendered in favor of the plaintiff having been set aside, and also from an order entered in said clerk's office *nunc pro tunc* as of the 19th day of February, 1902, granting the defendant's motion to set aside the verdict and for a new trial.

*George Wallace,* for the appellant.

*H. Snowden Marshall [George H. Abbott* with him on the brief], for the respondent.

JENKS, J.:

This is an action for negligence by servant against master. The servant was at work laying a pipe line. A pipe was raised by a derrick, and a rope sling was attached by a hook to a railroad rail, which had been put through the pipe to be laid extending into the

pipe then in place. After the pipe was raised, something gave way, and the plaintiff was struck and injured by the end of the rail over which he was standing in the inside of the pipe then in position. The plaintiff complains that the hook was improper, and, therefore, slipped and gave way, and that such hoisting apparatus, with such hook, was an unsafe appliance for the work. . The plaintiff testifies that the ordinary method was to use a derrick and a rope sling, and that although he had worked at laying pipe for two or three months, this was the first time that a rail had been thus used. His witness Abrams, a fellow-servant, testified that he had never theretofore seen a pipe thus moved. His witness Malloy, the foreman, testified that he had never thus used this rail on this work before, and that, so far he knew, none of the workmen had ever seen such use. The defendant's witness Cooper, who was in charge of the derrick at the time of the accident, testified that he had operated the hoisting engine and derrick for four months before the accident and that he had never seen the rail used in that way. The plaintiff testified that the rail was one of the Long Island railroad rails, but that he could not state whether it belonged to the railroad or where it belonged. Cooper testified that he did not know where the rail was obtained, but that he had nothing to do with its placing. Plaintiffs' witness Monds testified that the work was doing alongside of the track of the Long Island railroad; that he had seen numerous rails lying alongside of the track; that the rail in question was smaller than the Long Island railroad rails; that, however, there are two sizes, and that the ones they are "throwing out" are smaller than the ones they are putting in. On the other hand, there was no evidence that the railroad iron was an appliance owned, controlled, furnished or authorized by the master. True, the witness Monds does say that it was "the same rail that was used for months there," but he does not say that it was ever used as a part of the hoisting apparatus. And his testimony may be reconciled with the other testimony by noting that the plaintiff testified that they generally "shove it home with bars or by hand."

The learned counsel for the appellant argues that the plaintiff was not bound to bring the use of the rail home to the master, for the reason that he pleaded that the defendant owned or had "control of the rolling stock, equipments and appliances used in said work," and

that the defendant admitted this by the answer. The allegation is preliminary and general, and cannot be construed to be an admission that the defendant owned and controlled that which he had never furnished, nor permitted to be used in place of a complete apparatus. So far as this record reads, then, it appears that for this occasion only the foreman and the servants employed, in place of the complete and apparently adequate tackle theretofore in use, an iron rail which was neither furnished nor authorized by the master. The hook complained of was furnished by the master for adjustment with a rope sling, and had theretofore been thus solely used. There is not the slightest evidence that even in the misuse of the hook with the iron rail that the hook was inadequate or was bent or broken, or was not in its normal condition after the accident. If there were at hand, and furnished by the master, complete and adequate appliances for the work, he cannot be held liable, because a part of the apparatus furnished by him was joined with a thing not furnished by him, but substituted without his notice or authority (even though the foreman of the job chose it or consented to its use), with the consequence that the part furnished by him in connection with the foreign appliance did not work safely. (*Flet* v. *Hunter Arms Co.,* 74 App. Div. 572, citing *Mahoney* v. *Vacuum Oil Co.,* 76 Hun, 579; *O'Connall* v. *Thompson-Starrett Co.,* 72 App. Div. 47, 52; *Hussey* v. *Coger,* 112 N. Y. 614.)

I think that GARRETSON, J., made a correct disposition of the case. He simply granted a nonsuit, and the judgment should not record that the dismissal was on the merits. (*Peggo* v. *Dinan,* 72 App. Div. 434.)

The judgment should be amended and, as amended, affirmed, and the order should be affirmed, with costs.

GOODRICH, P. J., BARTLETT, WOODWARD and HOOKER, JJ., concurred.

Judgment amended and, as amended, affirmed, and order affirmed, with costs.